Francis J. Donovan, J.
This small claim proceeding is of special importance because it involves the operations of the defendant whose letterhead in evidence describes the defendant as “ Long Island’s Leading Body 'Shop
In 1959 the Town Board of the Town of North Hempstead, as well as the boards of the neighboring Towns of Hempstead and Oyster Bay adopted ordinances regulating the operation of tow cars in the respective towns. This regulation was required to curb abuses which were the subject of considerable public attention. Among the abuses were: (a) The uncontrolled competition which resulted in tow cars racing to the scene of an accident; (b) The unfair advantage taken of victims of accidents whose cars were towed from the scene under circumstances where the car owner or operator was at a distinct disadvantage because of the emotional state of the accident victim and the emergency physical situation in which he found himself.
Section 1.0 of the ordinance of the Town of North Hempstead contains a legislative finding which reads as follows: “ Sec. 1.0 It is hereby declared and found that it is of vital importance to the traveling public that disabled vehicles be removed from the highways as promptly as possible, that delay in removal results in retarding the movement of traffic unnecessarily and causes street accidents and that the towing of disabled motor vehicles in streets of the Town of North Hempstead is a matter affecting the public interest and consequently should be subject to supervision and administrative control for the purpose of safeguarding the public against fraud and exorbitant rates and similar abuses ”.
In the present case the plaintiff was involved in an accident on Old Country Road about 15 blocks from the place of business of the defendant which fronts on the same Old Country Road.
He signed a paper which reads: “ Repair and refinish collision damage as per itemized estimate”, *929 and toward the bottom of the same form: “ Tow to shop 12/5/72, 2:30 p.m. ”
The following printed recital in small print appears above his signature: “ I hereby authorize the above repair work to be done along with the necessary material ” (defendant’s Exhibit A in evidence).
The next day the plaintiff advised the defendant that he did not Want any work done on his car. On the second day after the accident plaintiff’s wife requested that the defendant release the car.
The defendant refused to release the car, insisting that there was a contract to repair the car. After considerable dispute between the parties, the car was ultimately released and the plaintiff was required to pay to the defendant the sum of $560.19.
The items in this 'bill are as follows:
Estimate and service rendered ..........$100.00
Tow charge —12/5/72 — 2:30 p.m......... 25.00
Inside storage.......... 40.00
Parts supplied to customer.............. 358.55
$523.55
The balance is $36.34 for tax.
When we compare these charges with the provisions of the ordinance we find a gross overcharge. A maximum towing charge is provided, namely, $15 for the first mile or part thereof and $1.50 for each additional mile. The charge of $25 would be consistent with a towing trip of eight miles. While there may be some difference in the size of blocks, 15 blocks is substantially less than eight miles.
There is a storage charge of $40. The same section of the ordinance provides: ‘ ‘ Storage charges shall be at the rate of not more than $1.50 for each 24 hours or part thereof for the first seven days, and $2.00 per day thereafter. Inside storage rates may be determined by agreement of the parties ”.
There was no agreement here for inside storage. The note at the bottom of plaintiff’s Exhibit No. 1 in evidence indicates that there was a $10 charge per day for inside storage. Applying the maximum provided for in the ordinance, the charge should not have been in excess of $1.50 a day for four days or $6.
Section 10.3 of the ordinance provides: “No fee shall be charged, either directly or indirectly for making an estimate for repairs on any vehicle involved in an accident or otherwise disabled without the prior written consent of the owner of the disabled vehicle
*930 There was never any consent by the plaintiff to the defendant to furnish an estimate. The charge of $100 for .such service is not only unauthorized but is exorbitant.
The defendant contends that there was an agreement to repair. The ordinance sets forth a form of agreement which must be substantially followed. There was no estimate annexed to defendant’s Exhibit A or ever furnished with it to the plaintiff. There are seven mysterious circles in the margin but there is. nothing set forth as to what the cost of the repair job will be. This is not an agreement for repair on its face and it is doubly deficient because it does not comply in any respect with the form set forth in section 10.3 of the ordinance.
It is interesting to note that section 10.4 has a form for authorizing towing. No such form was ever used in this case.
.Section 10.5 of the ordinance prescribes a form for the bill for towing. No such form was ever furnished to the owner in this case.
There are numerous, gross violations of the ordinance and a complete frustration of the underlying purpose of the ordinance. Such errors cannot be accidental or unintentional.
The entire pattern of this transaction is consistent with a routine method of conducting business in gross violation of the town ordinance.
The maximum legal charges here are: Towing — $15; Storage —two days at $1.50 or $3, and $268.95, the cost of parts. The sum of $358.55 on plaintiff’s Exhibit No. 1 in evidence obviously includes a markup which is a profit normally taken by the person .who actually does the work. Plaintiff’s Exhibit No. 2 in evidence establishes a cost to Scappy and Peck of $268.95. We cannot permit the defendant to make a profit on an illegal contract and therefore we restrict him to his out-of-pocket cost for parts. The $100 for “ Estimate and service ” must be completely disallowed as. unauthorized. Adding $20.09 for tax makes the maximum charge to the plaintiff of $307.04. He is entitled to a refund of $253.15 for overpayment.
However, this hardly compensates the plaintiff for the aggravation and inconvenience which was caused by this deliberate violation of law. The defendant is in a dominant position because he has a possessory lien and the owner may not obtain the release of his car without paying, under duress, the exorbitant sum demanded or bringing a litigation. The law provides for punitive damages in many cases where there is malice, and, interestingly, in the matter of liens, provides in section 39-a of the Lien Law a special penalty in the case of mechanics’ *931 liens where there is a willful gross exaggeration. By analogy, it would seem that some punitive damage should be allowed where a towman or garageman exploits his position as a lienor in violation of law and causes damage to a car owner which is not measureable by ordinary compensatory standards.
. Punitive damages have been allowed where a car owner was wrongfully deprived of the use of his car by an illegal repossession under a void conditional sales contract. (Manekas v. Allied Discount Co., 6 Misc 2d 1079.)
Punitive damages are usually awarded in eases of assault and defamation on the basis of the malice of the wrongdoer. But such damages may also be awarded in other civil actions where the defendant’s conduct has been wanton or reckless and without regard to the rights of the plaintiff or the people in géneral. (Soucy v. Greyhound Corp., 27 A D 2d 112, 113.)
The purpose of awarding punitive damage is “to deter the defendant and others from doing similar wrongful acts”. (9 N. T. Law of Damages, § 61.)
If these salutary ordinances in the County of Nassau are to be effective, they must be enforced. The occasional loss of a profit will not deter those who habitually violate such ordinances in the normal course of their business. Penal prosecutions, license suspensions and revocations and punitive damages would be the most readily available means of enforcement.
Plaintiff will be awarded punitive damages in the amount to be determined after a hearing.
The issue of punitive damages is set down for a hearing before me in Civil Part VT, in the Bast Wing Building at Mineóla at 9:30 a.m. on May 7,1973.