Francis J. Donovan, J.
In this small claim proceeding the plaintiff sues to recover for services rendered in connection with *22 the installation of a picture tube in defendant’s color television set. The defendant counterclaims for: (1) conversion of Ms television set, and (2) damages for loss of use of the set, in the total sum of $500.
The plaintiff was described by his attorney as one of the largest television service agencies on Long Island. He does business under the trade name “ Color King”. The plaintiff has run an advertisement for a considerable period of time which is in substance the same as the advertisement which attracted the attention of the defendant. So far as pertinent, this ad states that color television picture tubes are sold by the plaintiff at prices ‘1 so low that we áre not permitted by the manufacturer to advertise them ”.
The defendant’s set was operating satisfactorily and had been serviced by his regular repairman 10 days prior to the time he ordered a new color tube from the plaintiff. The first repairman had advised the defendant that the color tube would have to be replaced very shortly. The defendant ordered a new tube from the plaintiff at the agreed price of $144.35. The plaintiff’s employee, one Frank Esposito, installed a new picture tube in the set at the defendant’s residence. The picture which was produced was defective and was worse than the. picture which was produced by the old picture tube. Mr. Esposito told the defendant that additional, work was required on the set.
At this point the defendant became indignant, feeling that he was being made the victim of a scheme to foist additional charges upon him, and he demanded that the old tube be reinstalled. Mr. Esposito took the old tube out and attempted to take the new tube as well. However, the defendant retained possession of the new tube.
This evidence is uncontradicted. We therefore conclude that the defective picture :on the new tube was caused by the work done by Mr. Esposito. Either the work was not done in a good workmanlike fashion or the set was deliberately set up to produce a bad picture in order to impose charges on the consumer wMch were not required or justified. The plaintiff had no right to take possession of the old tube or the defendant’s set. If he felt that the work was done in a good workmanlike fashion, Ms only recourse would be to sue the consumer.
Mr. Laird, an employee of the plaintiff,, testified that he was _next sent out to satisfy the customer and reinstall the old tube, without charge, as the customer demanded. Laird went to the defendant’s home but he left the defendant’s old picture tube in *23 his vehicle. Strangely he did not take it into the house in order to reinstall it.
The defendant states that Mr. Laird said that the work which was done by Mr. Esposito was badly done and that he, Laird, would fix the set up to the defendant’s satisfaction but he insisted on taking the set to the shop. When the defendant objected to letting the set be taken from his home he was assured by Mr. Laird that the set would be repaired to his satisfaction and the only reason for taking it to the shop was to show the boss how badly -Frank Esposito had done the work. Belying on these representations the defendant permitted Mr. Laird to take the set from his home. Mr. Laird contends that he noticed a defect in the chassis of the set in that a ceramic cap from the horizontal output tube to the high voltage transformer was cracked and held on with a rubber band. However, on inquiry by the court he stated that he did not point this out to the defendant. It seems strange that Mr. Laird, appearing to satisfy the customer, does not point out something which to him was an obvious defect which would impair the picture even with a new tube. The court finds Laird’s testimony incredible in this respect and also finds that Mr. Laird misrepresented his intentions in order to persuade the defendant to part with possession of the set for the benefit of the plaintiff.
The plaintiff, at this point, now has a powerful negotiating position because he may assert a lien for his services and retain possession of the set unless and until the defendant pays whatever is demanded. One would be naive to view this maneuver in any other light.
Thereafter the matter was referred to the office of Consumer Affairs of the County of Nassau. That office intervened in an effort to effect some settlement but ultimately the matter went to -court. The court did not consider any evidence as to the negotiations conducted by the Office of Consumer Affairs since these are essentially settlement negotiations which are inadmissible on a trial. (White v. Old Dominion S. S. Co., 102 N. Y. 660; Matter of Edelman v. Goodman, 21 A D 2d 786.)
Frank Esposito was still employed by the plaintiff when the first hearing was held on June 28,1973. When the second hearing was held on August 27, 1973 the plaintiff advised the court that Frank Esposito had been discharged because his work was unsatisfactory. .Since Frank Esposito was under the control of the plaintiff at the time of the original hearing and he was not produced, the defendant’s uncontradicted testimony as to what *24 transpired between himself and Mr. Esposito will be given additional weight.
. To take possession of personal property where the consent of the owner is induced by a fraudulent misrepresentation is a conversion. (Prosser, Law of Torts [3d ed.], § 515; Roehrich v. Holt Motor Co., 201 Minn. 586; Brady v. Smith, 9 Misc. 716.)
To insist upon charges to which a mechanic has no right as a condition of returning property also constitutes conversion. (Prosser, Law of Torts [3d ed.], § 15; Allegro for Children v. Weisbrod, 27 N. Y. S. 2d 645.)
The plaintiff converted the defendant’s television set in both respects in that he obtained possession because of the fraudulent misrepresentations made by Mr. Laird and he also retained, possession of the set, demanding payment for services to which he was not entitled because of the improper work done by Frank Esposito. His obligation was to put the defendant’s set back in the condition in which he found it with the old picture tube. In either event the plaintiff is liable to the defendant for the fair market value of the set at the time it was taken. The Set had a market value of approximately $400 new. However, it was bought eight years ago and the picture tube was at the end of its useful life. Accordingly, we must take a substantial depreciation and the court determines, in the interest of substantial justice, that the fair market value of the set at the time of the taking was $75.
Throughout the entire transaction, beginning with the very appealing ad, there appears to be a clear intent and pattern designed to victimize the consumer. There appears to be and the court finds a deliberate plan to bait consumers with appealing ads and then foist upon them additional charges whitíh are Unwarranted. The conversion of the defendant’s set was a part of the basic plan to effect a consumer fraud.
We now come to the question of punitive damage. We take judicial notice of national and State policy which has prompted the enactment of .so much new law to protect consumers and the establishment of municipal departments for the sole purpose of investigating and eliminating consumer frauds. These laws and departments must be implemented by determined judicial action if they are to achieve their purpose.
In 1965 this, court struck down as unconscionable the exorbitant charge imposed on a consumer for the purchase of a freezer and limited recovery to the vendor’s cost. On appeal the contract was held unconscionable but the appellate court reverse^ *25 in part to allow a reasonable profit. (Frostifresh Corp. v. Reynoso, 52 Misc 2d 26, revd. in part, 54 Misc 2d 119.)
One commentator noted that the appellate disposition makes a holding of nnconscionability “a paper tiger indeed (68 Col. L. Rev., 483, n. 109.)
In spite of the unconscionable conduct denounced in Frostifresh and notwithstanding an injunction obtained by the Attorney-General, the principals in the “freezer fraud scheme ” continued the same operation for many years. In Star Credit Corp. v. Ingram (N. Y. L. J., July 3, 1973, p. 10, col. 5) the Civil Court, New York County, awarded punitive damages in the sum of $15,000 against those engaged in a “ freezer fraud ” scheme. The court commented that all other action had failed but the imposition of punitive damage might deter persons bent on perpetrating such frauds.
In Perlmuth v. Scappy & Peck (73 Misc 2d 927), this court awarded punitive damage where a body and fender shop made extortionate demands and exploited a possessory lien to enforce Sts demand.
We must take the profit out of consumer frauds. It is time to extend this extraordinary remedy to curb those unscrupulous television repairmen who seize a set and then exploit their possessory lien to extort money they have not earned. If punitive damages are. not imposed, the consumer has no real protection.. Few can afford to expend the time and money involved in bringing suit. Furthermore, the consumer will fail in most such suits because he will not be able to produce the expert testimony, required to establish the improper repair, or, because it is one against one in a case where he bears the burden of proof.
In the few cases such as this, where the fraud is proven, puni-. tive damage must be awarded. The defendant is awarded the ,. sum of $225, which is three times the value of the converted set.
Judgment is therefore rendered in favor of the defendant for the total sum of $300, and the plaintiff’s claim is dismissed.